UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA NOTTER,<br><br>  Plaintiff,<br><br> v.<br><br>CITY OF PLEASANT HILL, et al.,<br><br>  Defendants. | Case No.16-cv-04412-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. No. 86 |

Plaintiff Lisa Notter brought this civil action alleging violation of her civil rights in connection with her arrest at her home following a noise complaint regarding the music at her daughter's wedding reception. The parties reached a confidential settlement shortly before trial resolving all of the claims with the exception of attorney's fees and costs. Plaintiff's motion for attorney's fees and costs is now pending before the Court. (Dkt. No. 86.) After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS IN PART AND DENIES IN PART Plaintiff's motion for attorney's fees and costs.

**BACKGROUND**

**A. Factual Background**

Plaintiff Lisa Notter hosted her daughter's wedding reception at her home in Pleasant Hill, California on August 8, 2015. (Dkt. No. 65-2, Notter Decl. ¶ 2.) In advance of the reception, she contacted the Pleasant Hill Police Department to inquire whether there were any noise restrictions in place and whether there was anything she should do in advance. (*Id.*) The officer she spoke with advised her that "there were none *per se,* but that the music should be turned down by midnight." (*Id.* (emphasis in original).) The officer recommended that she distribute a flyer to her neighbors,

1  which she did. (*Id.*)

2  At approximately 10:20 p.m. on the night of the wedding, the Pleasant Hill Police
Department received a noise complaint and Officers Chelsea Wright and Sean Bias were
dispatched to Plaintiff's residence at 11:15 p.m.[1] (Dkt. No. 61-1.) Officer Wright arrived first and
noticed several young men working as valets outside the residence. (Dkt. No. 65-1 at 74:17-
75:24.) The parties' version of events thereafter diverges with Officer Wright testifying that one
of the valets invited her to follow him into the house to find the homeowner, and that same valet
disputing that he invited her to follow him and testifying instead that he offered to bring the
homeowner to her. (*Compare* Dkt. No. 65-1 at 12, Wright Depo. at 125:1-7; 132:6-16 *with* Dkt.
No. 65-1, Deluca Depo. at 8:17-23.[2]) In any event, Officer Wright entered the residence and
proceeded to the backyard where she engaged in a discussion with Plaintiff Lisa Notter regarding
the music. (Dkt. No. 65-2, Notter Decl. at ¶¶ 5-7; Dkt. No. 61-2, Wright Depo. at 85:11-88:2.)
During the course of the exchange, Officer Wright and Ms. Notter exchanged words and at some
point Plaintiff turned and water in a cup that she was holding either intentionally or accidently
ended up on Officer Wright's shoulder. (*Id.*) By this point Officer Bias arrived on scene and
Officer Wright put Plaintiff's hands behind her back and with Officer Bias's assistance escorted
Plaintiff to a side yard and placed her under arrest. (Dkt. No. 65-1 at 36, Bias Depo at 21:25;
158:16-160:21.) Ms. Notter was very upset and uttered profanity at the officers who she alleges
used excessive force in the arrest and when they subsequently escorted her to a police vehicle to
be taken to the station. (Dkt. No. 65-2 at ¶¶ 9-10.)

Ms. Notter was then taken to the Pleasant Hill Police Station where according to an
undisputed audio transcription Plaintiff was advised of her rights and told that she would be
allowed to go home if she would be cooperative and reasonable. (Dkt. No. 65-1 at 90-106.)
Although the audio does not reflect any further profanity or resistance on Plaintiff's part, shortly

---

[1] Officer Wright has since married and changed her surname to Ortega, and has been promoted to Detective. For purposes of clarity, the Court nonetheless refers to her as Officer Wright—her name and title at the time of the incident—throughout.
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

2

1  thereafter Sergeant Priebe, the sergeant in charge, told her that she was going to the jail for

2  booking because "[y]ou're functionally cooperating but the attitude test has not been passed."

3  (*Id.*) Plaintiff then spent the night in jail. She alleges that following the incident with Officers

4  Wright and Bias, she had bruising on her wrists, arms, and torso, as well as a fracture on her heel.

5  (Dkt. No. 65-1 at 117, Notter Depo. at 194:3-197:18; 209:16-23.)

### B. Procedural Background

A year after the incident, Plaintiff filed this civil action against the City of Pleasant Hill, the Pleasant Hill Police Department, and Officer Chelsea Wright. (Dkt. No. 1.) Plaintiff pled 14 claims for relief including claims under 42 U.S.C. § 1983 and state law. Defendants moved to dismiss for failure to state a claim and the Court granted the motion in part and denied it in part. (Dkt. Nos. 8 & 22.) Plaintiff thereafter filed her First Amended Complaint, again pleading 14 claims for relief under state and federal law, against Defendants the City of Pleasant Hill, Officer Wright, Officer Bias, and Sergeant Priebe. (Dkt. No. 27.) Plaintiff thereafter voluntarily dismissed her 13th claim for defamation and all claims as to Sergeant Priebe. (Dkt. No. 35.)

Plaintiff then moved for partial summary judgment on her claim that Officer Wright's warrantless entry into her home violated her Fourth and Fourteenth Amendment rights and Defendants moved for summary judgment on all of Plaintiff's claims. (Dtk. Nos. 56 & 60.) The Court denied both motions for summary judgment given the multiple factual disputes, noting that Plaintiff's motion regarding the warrantless entry claim presented a close question, but that the Court could not conclude as a matter of law that there were no set of provable facts which would entitle Officer Wright to at least qualified immunity. (Dkt. No. 72.)

A week after this ruling, the parties met with Magistrate Judge Salle Kim for the first of many settlement conferences. Although the case did not settle at that first settlement conference, it did settle on July 27, 2017 a week before trial was to commence. (Dkt. No. 77.) The parties placed the terms of the confidential settlement agreement on the record and executed a written settlement agreement on July 30, 2017. (Dkt. No. 87-1.) Among the other terms, the parties agreed that Plaintiff was the prevailing party for purposes of awarding attorneys' fees. This motion for attorney's fees followed.

**LEGAL STANDARD**

"[A] court assessing attorney[']s fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney ... involved in the presentation of the case." *Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32 (2001) (internal quotation marks omitted); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.").

Where, as here, a plaintiff has prevailed on both state and federal claims the court applies state law for attorney's fees to state claims and federal common law of attorney's fees to the federal claims. *See Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016). Federal and California law regarding attorney's fees are coexistent except that under California law, a prevailing Plaintiff may be entitled to lodestar enhancement or multiplier. "Thus, [o]nce the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Thayer v. Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 833 (2001) (internal citation omitted).

**DISCUSSION**

Plaintiff seeks $541,712.62 in fees and $11,444.07 in costs. This amount is based on $286,195 in fees for Matthew Witteman, $61,964.25 in fees for Panos Lagos and $10,325 in fees for Mr. Lagos's paralegal Alicia Hubbs, multiplied by a lodestar enhancement of 1.5. Defendants have three primary objections to the fee award: (1) certain billing entries are unreasonable and should be excluded; (2) Plaintiffs should not recover fees on fees; and (3) a multiplier is not appropriate. Defendants maintain that a reasonable attorney's fees award here is $206,994.86.

**A. Reasonable Hourly Rate**

"In determining the reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), amended on other grounds by 808 F.2d 1373 (9th Cir. 1987); *see also Graham v.*

*DaimlerChrysler Corp.*, 34 Cal.4th 553, 579 (2004). The relevant community for the purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal citation omitted). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also* Civil Local Rule 54–5(b)(3) (requiring the party seeking a fee award to submit "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services.").

Plaintiff seeks $650/hour for Mr. Witteman, $750/hour for Mr. Lagos, and $250/hour for paralegal Alicia Hubbs. (Dkt. Nos. 86-2 ¶ 6; 86-3 at ¶ 15.) In support of these hourly rates, Plaintiff submitted declarations from Mr. Witteman and Mr. Lagos discussing their qualifications and those of Ms. Hubbs. (Dkt. Nos. 86-2; 86-3.) Mr. Witteman is a 1989 law graduate and Mr. Lagos is a 1974 law graduate. (Dkt. Nos. 86-2 at ¶ 7; 86-3 at ¶ 2.) Plaintiff also provided declarations from outside attorneys Richard Pearl and Chandler Visher attesting to the reasonableness of the hourly rates sought. (Dkt. No. 86-4; 86-5.) Mr. Visher is a consumer class action attorney who has co-counseled with Mr. Witteman. (Dkt. No. 86-4 at ¶ 3.) He attests that Mr. Witteman's hourly rate of $650 is reasonable in light of his experience and that Mr. Witteman's 2010 hourly rate of $500 was approved by the court in *Collins v. City of Los Angeles*, BC 330749 and that in 2015 he retained Mr. Witteman to assist him in a matter and paid him an hourly rate of $600. (Dkt. No. 86-4 at ¶¶ 3-4.)

Mr. Pearl, an attorney who specializes in issues related to court-awarded attorney's fees, sets forth the non-contingent market rates charged by attorneys in California and approved by courts in this District and by other California courts over the last few years. (Dkt. No. 86-6 at ¶¶ 15-17 (citing, *inter alia*, *Huynh v. Hous. Auth. of Cty. of Santa Clara*, No. 14-CV-02367-LHK, 2017 WL 1050539, at *5-7 (N.D. Cal. Mar. 17, 2017) (approving hourly rates of $800 for class of 1990 graduates, $862.07 for class of 1996 graduates, and $236-275 for paralegals); *Cotter v. Lyft*

5

*Inc.*, No. 13–cv–4065–VC, 2017 WL 1033527, Dkt. No. 310 (N.D. Cal. Mar. 16, 2017) (approving hourly rates of $800 for class of 1996, $500 for class of 2010, $325 for class of 2014, and $200 paralegal rate); *California Building Industry Assn. v. City of San Jose, et al*., No. 110CV167289 ( Santa Clara Cty. Super. Ct. Dec. 23, 2016) (approving hourly rate of $810 for a 1980 graduate and $710 for a 1998 graduate); *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc*., No. 14–cv–4086–NC, Dkt. No 139 (N.D. Cal. Dec. 6, 2016) (approving hourly rates of $900 for class of 1980, $895 for class of 1985, $740 for class of 1997, and a $275 paralegal rate); *Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Tr., Inc*., No. 15-CV-00216-DMR, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (approving of hourly rates of $750 per hour for a 1991 graduate and $225 for a paralegal); *Alden v. Alden*, No. CIV 524269 (San Mateo Cty. Super. Ct. Nov. 23, 2015) (approving hourly rates of $990 for 41 years of experience, $875 for 22 years, $600 for ten years, and $500 for three years).

The Court finds that the evidence submitted by Plaintiff demonstrates that the rates requested by the attorneys here are in line with the overall market rate for attorneys of similar abilities and experience in this District. Defendants have not challenged any of Plaintiff's evidence in support of the hourly rates, nor have they supported their arguments with evidence of their own regarding legal rates in the community. Rather, they insist that the reasonable hourly rates are $500/hour for Mr. Witteman and $650/hour for Mr. Lagos because that is the amount that Plaintiff's counsel demanded in their fee negotiations. (Dkt. No. 89 ¶¶ 2-4.) Federal Rule of Evidence 408 prohibits a party from disclosing statements made or positions taken during settlement negotiations. *See* Fed. R. Evd. 408(a)(2) ("evidence of...conduct or a statement made during compromise negotiations about a claim" is not admissible). The Court thus will not consider the Defendants' arguments to the extent they are based on positions Plaintiff's counsel may have taken during settlement negotiations. Any such statements are inadmissible and irrelevant to counsels' actual reasonable hourly rate. Defendants only other reference to Plaintiff's counsels' requested hourly rates is an argument that counsels' hourly rates adequately compensates them for their work such that a multiplier would be inappropriate. The Court addresses this argument below in the context of Plaintiff's request for a multiplier.

Given the evidence Plaintiff offered in support of the requested hourly rates and Defendants' failure to offer any evidence disputing the reasonableness of these rates, the court finds that the requested hourly rates are reasonable. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990) (remanding case and instructing court to "presume [ ] requested rates are reasonable" where moving party submitted evidence supporting rates and opposing party did not support arguments about lower rates with evidence).

### B. Hours Reasonably Expended

A reasonable number of hours is equal to the number of hours that the attorney could reasonably bill to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Thus, the court should only award fees based on "the number of hours reasonably expended on the litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary ." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "There is no precise rule or formula for making these determinations," and the court "necessarily has discretion in making this equitable judgment." *Id*. at 436-37. The party seeking fees bears the initial burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Hensley*, 461 U.S. at 434; *Welch v. Met. Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). The burden then shifts to the "challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal.App. 4th 550, 564 (2008). If the party opposing the motion "cannot come up with specific reasons for reducing the fee request" that are persuasive, the court "should normally grant the award in full" or, at most, impose a ten percent reduction. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008).

Here, Plaintiff's attorneys have filed with the Court itemized billing statements and declarations indicating that Mr. Witteman expended 440.3 hours, Mr. Lagos expended 82.619 hours, and Ms. Hubbs spent 41.3 hours, plus an additional 41.75 hours for fees on fees. (Dkt. Nos. 86-2; 86-3; 91-1 at ¶ 8.) These declarations and exhibits are "satisfactory evidence" of attorney's fees. *See Camacho*, 523 F.3d at 980. Thus, Plaintiff has satisfied her initial burden of producing evidence demonstrating the reasonableness of the requested fee. The burden thus shifts to

7

Defendants to submit "evidence ... challenging the accuracy and reasonableness of the ... facts asserted by the prevailing party in its submitted affidavits." *Id.*; *see also Premier Med. Mgmt.*,163 Cal.App. 4th at 564.

### 1) Travel Time

Defendants insist that Mr. Witteman's 33.5 hours of travel time should be compensated at a lower hourly rate of $250 per hour. Defendants provide no legal authority for this position; indeed, they do not provide any argument at all and instead attempt to incorporate by reference contents of letters sent to Plaintiff's counsel attempting to informally negotiate the fees.[3] (Dkt. Nos. 89-1; 89-2.) "[T]his district has long granted prevailing parties their full hourly rate for travel time." *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1177 (N.D. Cal. 2012); *see also Santiago v. Equable Ascent Fin.*, No. 11-3158-CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013) ("A lawyer's travel time is recoverable at a professional hourly rate because time spent traveling is time the attorney could not spend performing legal services for clients."). Accordingly, Mr. Witteman is entitled to his full rate for the 33.5 hours of travel time billed.

### 2) Conferencing Time

Defendants also object to billing entries consisting of meetings or discussions between co-counsel; again, without citation to particular billing entries or even a total amount of the fees to which they object on this basis. "Collaboration does not necessarily amount to duplication that is not compensable." *Premier Med. Mgmt. Sys., Inc.*,163 Cal.App. 4th at 562. Defendants have failed to meet their burden to show that any of the unspecified time Mr. Witteman and Mr. Largos spent conferencing was unreasonable. No deduction is warranted based on conferencing or collaboration between counsel.

### 3) Attorneys Billing for Clerical Time

Defendants also object to "attorney billing for paralegal or clerical work," but again fail to cite to particular billing entries or even provide a total amount Defendants believe should be

---

[3] To the extent Defendants expect the Court to decipher the hand-written notations they made on Plaintiff's time records as part of the meet and confer process, the Court declines to do so. If Defendants felt strongly that any particular entry was unreasonable or improper, they should have made a proper showing to this effect in their *motion*.

8

1 deducted for this clerical work. (Dkt. No. 88 at 4:19-20.) Defendants have thus failed to meet their burden to demonstrate that any particular entries are excessive and the Court declines to make any deductions on this basis.

**4) Reductions to Particular Entries**

Defendants also object to "billing which was outside the scope of the underlying litigation, such as research regarding tax liability" and "excessive [entries] such as reducing a 5.8 hour entry of 'exhaustive research on qualified immunity' to 2.9 hours." (Dkt. No. 88 at 4:19-22.) Defendants have again failed to point to any specific billing entries other than the one regarding qualified immunity and thus have failed to meet their burden to demonstrate that any particular entry is unreasonable. Further, Defendants' deduction to Plaintiff's entry regarding qualified immunity research is improper. Qualified immunity "sometimes requires complicated analysis of legal issues." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Indeed, this was the case here as the Court denied Plaintiff's motion for summary judgment because it could not conclude as a matter of law that there was no set of provable facts which would entitle Officer Wright to at least qualified immunity. (Dkt. No. 72 at 13.) That Plaintiff's counsel spent nearly six hours researching these complicated issues was hardly excessive and was, instead, good lawyering.

**5) Fees on Fees**

Finally, Defendants object to Plaintiff's request for fees on fees. Defendants insist that the fee motion was unnecessary in light of their "reasonable settlement offer." (Dkt. No. 88 at 5:23.) However, the Ninth Circuit has repeatedly held that time spent by counsel establishing the right to a fee award is compensable. *See, e.g.*, *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986); *Ketchum*, 24 Cal.4th at 1137 ("prevailing parties are compensated for hours reasonably spent on fee-related issues. A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.") Accordingly, Plaintiff is entitled to fees for the 37.75 hours Mr. Witteman spent on the fee motion and reply, and the 4 hours Mr. Lagos spent on the fee motion.

**C. Multiplier**

Under California law, a multiplier or lodestar enhancement is available under certain

circumstances such as when, as here, a Section 1983 claim is accompanied by a Bane Act claim. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014) ("If the Estate had prevailed on its § 52.1 claim, it could have received a multiplier of its attorneys' fees to account for the risk of contingent representation."). When the litigation "involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services" the court may adjust the lodestar accordingly. *Ketchum*, 24 Cal.4th at 1132. Courts generally consider the following factors in determining whether a multiplier is appropriate: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Id*. The party seeking a lodestar enhancement bears the burden of proving the multiplier is warranted. *Id*. at 1138.

Here, Plaintiff requests a 1.5 multiplier. Plaintiff argues that this amount fairly compensates counsel for the contingent nature of the case and the substantial risk that counsel would not recover for the over 400 hours of work counsel put in on the case and the $10,000 in costs counsel advanced. Further, Plaintiff emphasizes that counsel took the case as a referral from Alameda County Bar Association, an out-of-county referral source, and achieved significant results on Plaintiff's behalf. Finally, Plaintiff insists that the case presented novel and difficult questions regarding warrantless entry and consent, as well as a Bane Act claim based on threats in response to Plaintiff's exercise of her First Amendment rights.

Defendants object to any multiplier insisting that the outcome was not so unusually favorable as to warrant a multiplier, that the legal questions were not that complicated, that counsel has not shown they were precluded from other employment while this action was pending, and that Plaintiff waived or dismissed certain claims including her *Monell* claim, defamation claim, wage loss claim, and her claims for more than garden variety emotional distress. In their "supplemental confidential opposition brief" Defendants also argue—without citation to any authority—that because Plaintiff signed a release under California Civil Code Section 1542 she is

precluded from pursuing a multiplier. (Dkt. No. 90-4 at 4.[4]) Defendants make a related argument that it would be unfair to award a multiplier because that is not what they envisioned when they settled the claims here and agreed that Plaintiff was a prevailing party for purposes of any fee motion. Lastly, Defendants insist that counsels' hourly rates adequately compensate counsel and that a multiplier would constitute impermissible double-counting. These arguments are unpersuasive.

"[T]he unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." *Ketchum*, 24 Cal.4th at 1138. In *Ketchum*, the California Supreme Court held that "contingency cases as a class" warrant special consideration in terms of fee enhancements, explaining that enhancements may make cases involving enforcement of constitutional rights "economically feasible to competent private attorneys." *Id*. at 1133. As such, "[a] contingent fee must be higher than a fee for the same legal services paid as they are performed" because "[t]he contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans." *Id*. at 1132–33 (citation and quotation marks omitted).

Counsel took considerable risk in taking on this case both in terms of the amount of time and costs counsel advanced, but also in terms of the viability of the claims giving the thorny qualified immunity issues. The legal issues in this case were complicated—Defendants' brief concedes as much stating that "the legal question relating to the applicability of qualified immunity" based on the warrantless entry were "unique." (Dkt. No. 88 at 3:1-2.) Indeed, at the summary judgment hearing, the Court questioned the parties at length regarding these legal issues noting the complexity of the entry and consent issue and the need spend extra time preparing the jury instructions in this case. In addition, the results counsel achieved were significant and they

---

[4] Defendants' stipulated administrative motion to file this brief under seal because it discusses the terms of the parties' confidential settlement is GRANTED. (Dkt. No. 90.)

11

were achieved without the added expense and burden for all the parties of a trial.

Finally, Defendants' argument that a multiplier would be unfair here because it was not discussed during the parties' settlement negotiations is unpersuasive. California law clearly provides for a multiplier in cases such as this. *Chaudhry*, 751 F.3d at 1106. Contrary to Defendants' argument, this is not such a novel result. *See Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *14 (N.D. Cal. Dec. 8, 2014) (awarding 1.1 multiplier on a Bane Act claim following a settlement). In light of this clear authority, to avoid the possibility of a multiplier Defendants could have negotiated a settlement of the federal claims with dismissal of the state claims. They did not. In contrast to the multiplier authority, Defendants do not cite any authority, and the Court is unaware of any, for the proposition that Plaintiff's 1542 release precludes her from seeking a multiplier here. Finally, counsels' hourly rate does not adequately compensate counsel for the risk of this contingent case. *See Ketchum*, 24 Cal. 4th at 1133.

The Court concludes that a modest multiplier is appropriate. While Defendants did settle the Bane Act claim, there are serious questions about how much the settlement could have included with respect to that claim given that Sergeant Priebe was not a defendant at the time it settled. Without Sergeant Priebe as a defendant, Plaintiff's Section 1983 and Bane Act claims are largely coextensive. While these circumstances do not preclude relief under both claims, and while as a prevailing party on the Bane Act claim Plaintiff is eligible for a multiplier, the interconnectedness of the claims is a factor the Court considers in determining the amount of the multiplier. The Court thus reduces Plaintiff's multiplier request to 1.1. In addition, the multiplier only applies to the lodestar prior to the fees on fees. *Id.* at 1141. The Court thus applies the multiplier to the lodestar without the inclusion of fees on fees ($24,537.50 for the 37.75 hours of work done by Mr. Witteman and $3,000 for the 4 hours of fees on fees work done by Mr. Lagos).

**CONCLUSION**

For the reasons stated above, Plaintiff's motion for attorney's fees and costs is GRANTED. Mr. Witteman is awarded $261,690 times the 1.1 multiplier plus $24,537.50 for fees on fees for a total of $312,396.50 and Mr. Lagos is awarded $71,914.25 times the 1.1 multiplier plus $3,000 for fees on fees for a total of $82,105.68. Plaintiff is awarded a total of $11,444.07 in costs with

12

$6,057.43 going to Mr. Witteman and $5,386.64 going to Mr. Lagos.

This Order disposes of Docket Nos. 86 and 90.

**IT IS SO ORDERED.**

Dated: November 30, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

13